**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| _____ | |
| MILLENNIUM TGA, INC. ) | CASE NO. 1:10-CV-05603 |
| ) | |
| Plaintiff, ) | |
| ) | Judge: Blanche M. Manning |
| v. ) | |
| ) | Magistrate Judge: Michael T. Mason |
| DOES 1 – 800 ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**SPECIAL APPEARANCE TO CONTEST PERSONAL JURISDICTION**

**CONSOLIDATED MOTION & MEMORANDUM TO QUASH SUBPOENA PURSUANT
TO FED. R. CIV. P. 45(C)(3) OR IN THE ALTERNATIVE TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(2)**

## I. INTRODUCTION

Moving Defendants John Doe 71.184.73.220 and John Doe 72.79.213.152 *without waiving jurisdiction*, file this motion not to make an appearance, but to *contest personal jurisdiction*.

The federal courts have safeguards, both procedural and substantive, to protect the rights of individual defendants. Those safeguards apply in all litigation regardless of the legal claims made and should be applied here as well. Certainly, copyright infringement is a legitimate basis for suit, and if many people engage in copyright infringement, many people may be sued. But the general safeguards developed by federal courts to ensure that all civil defendants get a fair chance to present their defenses always apply and, in a case such as this, have special importance. Unfortunately, the Plaintiff has flouted those procedures, violating the rights of the Moving Defendants.

The first of those safeguards is personal jurisdiction. Plaintiff's own factual allegations show that almost all of the Doe Defendants are located outside this Court's jurisdiction and do not appear to have sufficient contacts with the Northern District of Illinois to support being haled into court here. Furthermore, the Plaintiff corporation itself was neither organized nor has a principal place of business within Illinois. Indeed, the only party with known contacts to Illinois is the Plaintiff's counsel. The second safeguard is joinder. Plaintiff has improperly joined 800+ unrelated Defendants into a single action, jeopardizing their right to an individual evaluation of their actions and defenses. Finally, Plaintiff has yet to provide proof of copyright registration, or that it submitted an application.

While the Court granted Plaintiff's motion for early discovery on September 2, 2010, it did so on an *ex parte* basis and without the benefit of having been informed of the critical substantive and procedural issues at stake for the literally thousands of anonymous Defendants this lawsuit targets. This brief window — prior to Defendants' identities from being disclosed — may be the last chance that the Court has to ensure that the Moving Defendants are treated justly, that their rights are protected, and that they will not be induced to settle by the fear, embarrassment or humiliation for allegedly downloading a pornographic movie.

## II. TECHNICAL BACKGROUND

### A. Internet Protocol Addresses

### 1. Definition

Any customer of an Internet Service Provider ("ISP"), such as the Moving Defendants, who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address. *See also U.S. v. Heckenkamp*, 482 F.3rd 1142, 1144 (9th Cir. 2007) ("An IP address is comprised of four integers less than 256 separated by periods"). In addition to the customer's IP

2

address, the ISP's network is also assigned its own IP address. *See generally LVRC Holdings v. Brekka*, 581 F.3rd 1127, 1130 (9th Cir. 2009).

### 2. Purpose

The purpose of an IP address is to route traffic through the network. "IP addresses specify the locations of the source and destination nodes in the topology of the routing system. For this purpose, some of the bits in an IP address are used to designate a subnetwork."[1]

As a result, IP addresses serve as a useful tool to determine the general geographic location of both the ISP and the user. A number of public domain tools are available on the Internet, such as ARIN Whois, available at http://whois.arin.net/ui/, to determine the city, state and country where an IP address is located. For example, a query submitted to ARIN's Whois on the IP address listed on Plaintiff's subpoena for John Doe 71.184.73.220, one of the Moving Defendants returns the following result as shown in Exhibit A; and Exhibit C for John Doe 72.79.213.152.

Thus, with a few clicks, counsel for the Plaintiff (or anyone else) could have discovered that the IP addresses which are the subject of their subpoenas both receive Internet service through Verizon Online and that Verizon Online's main server is based in Reston, Virginia. To verify this information, a user can access a free tool like http://whatismyipaddress.com/ and discover where the holder of the IP address is physically located. Entering "71.184.73.220" returns a location of Chelmsford, Massachusetts as shown in Exhibit B; "72.79.213.152" returns a location of Northampton, Massachusetts as shown in Exhibit D.

---

[1] "IP Address" http://en.wikipedia.org/wiki/IP_address#cite_note-rfc791-1 (Last visited March 25, 2011).

Thus, without any of the information sought in the subpoena, the Plaintiff already knows that the Moving Defendants' ISP is located in Reston, Virginia, and that John Doe 71.184.73.220 is located in Chelmsford, Massachusetts, and John Doe 72.79.213.152 in Northampton, Massachusetts. Thus, neither the ISP nor the Moving Defendants are subject to this Court's jurisdiction, as set forth below.

### III. ARGUMENT

**A.      This Court Lacks Personal Jurisdiction over Moving Defendants and Dismissal is Appropriate Under Fed. R. Civ. P. 12(b)(2)**

In addition to the numerous other fatal flaws in Plaintiff's litigation approach, Plaintiff has not met and cannot meet its burden to establish that this Court has personal jurisdiction over the Moving Defendants. Consequently, the Court may not authorize or enforce any discovery Plaintiff seeks about the Moving Defendants. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 877 (7th Cir. 2006) (holding that a prima facie case for personal jurisdiction must be made before discovery is allowed); *see also Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-471 (5th Cir. 1985) (no authority to issue preliminary relief without personal jurisdiction); *accord United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1084 (1st Cir. 1992) (same). Therefore, and contrary to the Plaintiff's suggestion, the jurisdictional question is a live issue that the Court can and should consider before allowing this action to move any further.

The Constitution imposes on every plaintiff the burden of establishing personal jurisdiction as a fundamental matter of fairness, recognizing that no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact. These requirements "give[] a degree of predictability to the legal system that allow potential

defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Accordingly, it is the <u>Plaintiff</u> who bears the burden of pleading facts sufficient to support the Court's exercise of personal jurisdiction over the Moving Defendants. Simply reciting personal jurisdiction requirements is not enough, nor are the assertions of legal conclusions; rather, Plaintiff must assert the factual basis underlying its claims. See, e.g., *uBID, Inc. v. The GoDaddy Grp., Inc.*, 623 F.3d 423, 423 (7th Cir. 2010) (stating that plaintiff bears the burden of making a prima facie case for personal jurisdiction); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) ("The plaintiff, moreover, has the burden of demonstrating the existence of personal jurisdiction.").

Plaintiff has offered two theories for the Court's exercise of personal jurisdiction over the Moving Defendants: first, that "each Defendant may be found in this District" and second (in the alternative) that "a substantial part of the acts of infringement complained of herein occurred in this District" because the acts "occurred in every jurisdiction in the United States, including this one." Complaint ¶ 7. Plaintiff has not made a *prima facie* showing for either allegation for the Movants. Consequently, the motion to quash should be granted.

1. **Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal Jurisdiction Over the Moving Defendants Based on Their Domiciles.**

Federal courts may exercise personal jurisdiction over individuals whose domicile is within the jurisdiction.[2] See, e.g., *United States v. Henderson*, 209 Fed. Appx. 401, 402 (5th Cir. 2006); *Milliken v. Meyer*, 311 U.S. 457, 463-64 (1940); *Heartstation, Inc. v. J.L. Indus.*, No. 02 C

---

[2] As pled, Plaintiff alleges that the Court has personal jurisdiction over the Moving Defendants based on "residen [cy]" as opposed to domicile. Corrected First Amended Complaint ¶ 6. Although residency is an insufficient basis for personal jurisdiction as individuals may have several residencies but only one domicile at a time. *See, e.g., Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) (disputing an argument that one can have two residencies, choosing one as his domicile "because it makes changing one's domicile too easy"). Moving Defendants will treat Plaintiff's jurisdictional allegation as one based on domicile and not residency for purposes of this brief.

5994, 2003 U.S. Dist. LEXIS 5659, *7 (N.D. Illinois April 3, 2003) (holding "[a] defendant domiciled in a forum state or who has activities that are "substantial" or "continuous and systematic" is subject to the general jurisdiction of that state") (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). For the Moving Defendants, however, Plaintiff has failed to make a prima facie showing to support this purported basis for jurisdiction. The only jurisdictional facts alleged by Plaintiff are the IP addresses identifying each Moving Defendant, as well as the corresponding torrent file swarm/copyright work in which the Moving Defendant was allegedly participating, and the date and time of the Moving Defendant's alleged activity that it includes as Exhibit A to its Corrected First Amended Complaint. Corrected First Amended Complaint ¶ 24; Corrected First Amended Complaint, Ex. A. Not only does this submission not indicate that the Moving Defendants are residents of Illinois; it suggests that the Moving Defendants were outside of Illinois when the allegedly infringing activity took place.

Plaintiff suggests that the Court cannot determine whether there is a basis for personal jurisdiction until *all of the Does*' identities and residences are revealed. In fact, the Court (and Plaintiff) *can* determine, based on IP addresses collected, the location of the computers associated with those addresses. As explained above, many tools freely available to the public, help reveal where a person using a particular IP address is likely to be physically located.

Thus, the available evidence — which was in Plaintiff's possession before it filed its Complaint — indicates that the Plaintiff had no business whatsoever invoking this Court's jurisdiction and using that invocation to obtain a discovery order. With no evidence supporting the claim that Defendants are "residents" of Illinois, and with the only proffered allegations supporting the opposite conclusion, the Court can not exercise personal jurisdiction over Defendants.

2.     **Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal Jurisdiction Over the Moving Defendants Based on Acts in Illinois.**

Plaintiff alternatively argues that the Court has personal jurisdiction over the Moving Defendants because the alleged acts of copyright infringement "occurred in every jurisdiction in the United States, including this one." Corrected First Amended Complaint at ¶ 7. Plaintiff has not met its *prima facie* burden supporting this jurisdictional argument either.

In order for a court to exercise personal jurisdiction over a non-consenting, non-resident defendant, suit in the forum at issue must be consistent with the requirements of the Due Process Clause.[3] The Illinois long-arm statute has become co-extensive with the due process requirements under the federal and Illinois constitutions. *Keller v. Henderson*, 359 Ill. App. 3d 605, 611-612, 834 N.E.2d 930, 936 (Ill. App. 2005). Moreover, although Illinois due process requirements theoretically could diverge at some point from federal due process requirements, courts have held that "because Illinois courts have not elucidated any 'operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction,' the two constitutional analyses collapse into one." *Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc.*, No. 04-C-6900, 2005 U.S. Dist. LEXIS 6244, slip op. at 5 (N.D. Illinois February 23, 2005) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002)). That being said, "[d]ue process under the Illinois Constitution requires that it be 'fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois.'" *Keller*, 359 Ill. App. 3d at 619, 834 N.E.2d at 942 (quoting *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 565 N.E.2d 1302 (Ill. 1990)). Accordingly, a plaintiff must

---

[3] A court's exercise of personal jurisdiction over non-consenting, non-resident defendants must additionally be authorized by statute. The Illinois long-arm statute reaches as far as the Due Process Clause will permit. *See, e.g.*, *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1164 (N.D. Ill. 1995) ("[T]he Illinois long-arm statute is now co-extensive with the limits of due process.").

demonstrate that: (1) the non-resident has "minimum contacts" with the forum and that (2) requiring the defendant to defend its interests in that state "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 at 463). Plaintiff has not met this burden.

As discussed above, the only jurisdictional facts identified by the Plaintiff (i.e., the IP addresses it associates with each of the Moving Defendants) give no indication that the alleged copyright infringement occurred in this state. Without the necessary prima facie evidence to support the claim that the alleged infringement took place within the state, Plaintiff has not established minimum contacts and therefore this Court cannot exercise personal jurisdiction over the Moving Defendants. *See, e.g.*, *Enterprise Int'l*, 762 F.2d at 470-471 (no authority to issue preliminary relief without personal jurisdiction).

To the extent that Plaintiff claims a more expansive theory of personal jurisdiction based on the accessibility of information on the Internet in general, courts have long rejected such theories of "universal jurisdiction." As the Fourth Circuit explained in *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002):

> The argument could . . . be made that the Internet's electronic signals are surrogates for the person and that Internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received. .. But if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.

> In view of the traditional relationship among the States and their relationship to a national government with its nationwide judicial authority, it would be difficult to accept a structural arrangement in which each State has unlimited judicial power over every citizen in each other State who uses the Internet. . . . That thought certainly would have been considered outrageous in the past when interconnections were made only by telephones.

*Id*. at 712-713 (citations omitted).

Accordingly, the Fourth Circuit limited the exercise of personal jurisdiction based on Internet usage to situations where the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id*. at 714.

The Seventh Circuit has similarly rejected theories of "universal jurisdiction" based on Internet usage. See generally *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) ("Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country."). In *uBID, Inc*., 623 F.3d at 423, for example, the court noted that while "physical geographical nexus is simply less important in cases where the alleged harm occurred over the Internet, the plaintiff must still prove that the defendant had constitutionally sufficient contacts with the forum and that the defendant's contacts were temporally and substantively related to the lawsuit. Without that showing, the mere fact that the defendant allegedly caused harm by conducting business or advertising over the Internet is not adequate to establish jurisdiction in the plaintiff's chosen forum state. " Id. at 431 (citing *GTE New Media Services Inc. v. BellSouth Corp*., 199 F.3d 1343, 1350 (D.C. Cir. 2000); *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 418 (9th Cir.1997)).

The court went on to find jurisdiction because there was an intimate substantive and temporal relationship between the contacts alleged in *uBID's* complaint and the wrongs alleged

in *uBID's* complaint such that "GoDaddy cannot reasonably have been surprised to find itself sued in Illinois":

> The relationship between GoDaddy's Illinois contacts and uBID's claims is close enough to make the relatedness quid pro quo balanced and reasonable. GoDaddy has reached hundreds of thousands of people in Illinois with its advertising, which we know because it has made hundreds of thousands of sales in Illinois. How has GoDaddy advertised and made these sales? Based on the allegations in uBID's complaint, it has done so "by offering 'free parking' of a registrant's domain name." Complaint ¶ 20. Looking to the forum state's side of the bargain, what does the plaintiff charge GoDaddy with doing? The greatest part of uBID's complaint is devoted to allegations that, as the licensee of its registrants, GoDaddy "used and trafficked in" the free parked pages with bad-faith intent to profit from uBID's marks. Complaint ¶¶ 20-22; Ex. A.

*Id*. at 430-31.

Plaintiff has submitted no evidence of a comparable relationship here. Rather, it has offered a mere allegation that because the alleged distribution took place over the Internet, it occurred in every jurisdiction. Following *uBid*, that cannot suffice to establish this Court's jurisdiction.

Additional guidance may be found in *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010). In that case, the defendants were alleged to have published false and defamatory statements about Tamburo; such messages included Tamburo's Illinois address and readers were urged to contact and harass him, and boycott his services. *Id*. at 698. The complaint also alleged that one defendant personally contacted Tamburo by email. *Id*. at 706. Thus, the allegations suggested that defendants knew Tamburo lived in Illinois and operated his business here. Thus, although they acted from points outside the forum state, these defendants were alleged to have specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the "brunt of the injury" there. *Id*.

In the immediate case, even assuming that each of the Moving Defendants knew that they were infringing Plaintiff's copyright, there is no evidence that Plaintiff has any connection to Illinois, or even more significant, that the Does were aware of such a connection. Consequently, Plaintiff has made no *prima facie* showing that any of the Moving Defendants had any idea that Plaintiff would suffer any harm in Illinois.

### D.      Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts.

To the extent that Plaintiff argues that it should be granted leave to seek discovery in support of its jurisdictional allegations, this effort too must fail. Plaintiff's failure to meet its jurisdictional burden is to be determined before discovery is issued, not after.

When seeking discovery on personal jurisdiction, a plaintiff is required to make a "preliminary showing of jurisdiction" *before* they are entitled to discovery. *See*, *e.g.*, *Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) ("At minimum, the plaintiff must establish a prima facie showing of personal jurisdiction before discovery will be permitted."); *see also Cent. States*, 230 F.3d 934 at 946 ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."). However, it is well within the district court's discretion to deny discovery requests where the plaintiff "offers only speculation" of jurisdiction; "fishing expeditions" into jurisdictional facts are strongly disfavored. *See*, *e.g.*, *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (holding that a court can deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Morrison v. YTB Int'l.*, 641 F. Supp. 2d 768, 781 n.8 (S.D. Ill. 2009) (denying a discovery request is appropriate where "the requested discovery amounts merely to a fishing expedition"). Where, as here, the Plaintiff's own factual

allegations plainly serve only to demonstrate the absence of proper jurisdiction, the Court should decline to extend this case further.

**B.      Because The Court Lacks Personal Jurisdiction over Moving Defendants, the Subpoena for Moving Defendants' Records Should be Quashed and the Claims Dismissed**

Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv), this Court must quash a subpoena when it appears that the subpoena would subject "a person" to undue burden. For the reasons set forth above, this Court lacks personal jurisdiction over Moving Defendants in compliance with Fed. R. Civ. P. 12(b)(2). Plaintiffs have alleged no facts which would indicate they believe the Moving Defendants possess information which would be relevant to this case if any individual defendant were a non-party. Accordingly, if the Moving Defendants cannot be added to this action as individual Defendants in this Court, than there is no justification for the undue burden placed upon the Moving Defendants, including but not limited to the invasion of the Moving Defendants' privacy associated with the disclosure of each Moving Defendant's name, address and contact information. The subpoena should therefore be quashed and the claims dismissed.

**C.      Plaintiff Has Improperly Joined the Moving Defendants Based on Entirely Disparate Alleged Acts.**

Plaintiff's joinder of 800+ Defendants in this single action is improper. Mass joinder of individuals has been disapproved by federal courts in copyright infringement cases based on computer downloads before. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

12

*BMG Music v. Does 1-203*, 2004 WL 953888, at *1 (severing lawsuit involving 203 defendants).

The language above was quoted with approval recently in an Order issued December 16, 2010, by the United States District Court for the Northern District of West Virginia. See *West Coast Productions, Inc., v. Does 1-535*, No. 3:10-cv-00094-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 45, RJN Ex. A (quoting *BMG Music v. Does 1-203*, 2004 WL 953888, at *1). In that case, an ISP, Time Warner Cable, moved to quash a subpoenas seeking identifying information for numerous Doe defendants. As here, the complaint alleged that all of the Does had used BitTorrent to commit copyright infringement (although in that case the Defendants were all alleged to have uploaded and downloaded a single copyrighted work). The court held that all defendants but Doe 1 were improperly joined, severed those defendants from the action, and quashed subpoenas seeking identifying information for those defendants. The Order stressed that any new actions against the severed Does may proceed only against Does with IP addresses of computers located within that court's jurisdiction. *Id*. at 4 n.2. Virtually identical Orders were issued in seven additional cases.[4]

As these courts recognize, Rule 20 requires that parties should not be joined in the same lawsuit unless the claims against them arise from a single transaction or a series of closely related transactions. Specifically:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

---

[4] *See Combat Zone, Inc., v. Does 1-1037*, No. 3:10-cv-00095-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 71; see also *Combat Zone, Inc., v. Does 1-245*, No. 3:10-cv-00096-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 28; *Patrick Collins, Inc., v. Does 1-118*, No. 3:10-cv- 00092-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 42; *Patrick Collins, Inc., v. Does 1-281*, No. 3:10-cv-00091-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 42; *Third World Media, LLC, v. Does 1-1243*, No. 3:10-cv-00090-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 66; *West Coast Productions, Inc., v. Does 1-2010*, No. 3:10-cv-00093-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 44.

Fed. R. Civ. P. 20.

Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met: (1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; and (3) there must be a common question of fact or law common to all the defendants. *Id*.

District courts, including this one, have declined to find joinder based solely on infringement of the same intellectual property, let alone separate ones — as the case is here. In *ThermaPure, Inc. v. Temp Air, Inc.*, No. 10-CV-4724, 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2002), for example, the District Court for the Northern District of Illinois firmly rejected infringement of the same patent as a basis for joinder. *Id*. ("Courts in this district . . . have consistently held that Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark.)

Similarly, joinder based on *separate* but similar acts of copyright infringement over the Internet has not only been rejected by this Circuit, but repeatedly by courts across the country.[5] In denying efforts by recording industry plaintiffs to join 254 defendants accused of infringing their copyrights by illegally downloading music, District Court for the Western District of Texas, stated:

> The claim is against each defendant is individual, based on individual acts of each defendant, and if proven, will result in unique damage claims. The defendants are not properly joined under Rule 20.

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004)

Indeed, the Does here are not even alleged to have infringed the same movie. *See* Corrected First Amended Complaint, Ex. A. The only thing they all are alleged to share in common is using the same internet protocol. *See Androphy v. Smith & Nephew, Inc*., 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) ( "[C]laims of infringement against unrelated defendants, involving different machines, should be tried separately against each defendant.") (quoting *New Jersey Mach. Inc. v. Alford Indus. Inc*., Civ. A. No. 89-1879(JCL), 1991 WL 340196, at *2 (D.N.J. Oct. 7, 1991). Put simply, the alleged wrongful acts were committed by unrelated Defendants, at

---

[5] *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way. The court explained: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *Id.* at *2. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the district court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. *See also, e.g., Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used ISP and P2P network to conduct copyright infringement); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp. v. Does 1-12*, No. C-04-04862 (N.D. Cal. Nov. 16, 2004) (permitting discovery in copyright infringement action against twelve defendants to identify first Doe defendant but staying case against remaining Does until plaintiff could demonstrate proper joinder) (RJN Exhibit C): *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY); *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY); and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music filesharing).

different times and locations, sometimes using different services, and perhaps subject to different defenses. This kind of attenuated relationship is not sufficient for joinder. *See, e.g.*, *BMG Music v. Does 1-203*, 2004 WL 953888, at *1.

Even if the requirements for permissive joinder under Rule 20(a)(2) had been met, this Court would have broad discretion to refuse joinder under Rule 21 in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness. See, e.g., *Intercon Research Assocs., Ltd. v. Dresser Indus, Inc.*, 696 F.2d 53, 57-58 (7th Cir. 1982) (citing Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980)) ("[A] trial court must . . . determine whether the permissive joinder of a party will comport with the principles of fundamental fairness."); *see also Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516, 521 (5th Cir. 2010); *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580-81 (E.D.N.Y.1999), and *Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir.2000)). Joining hundred of unrelated defendants in one lawsuit here may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed.[6]

Moving Defendants note that the Court has repeatedly cautioned Plaintiff's attorney to file against defendants jointly only where there is "joint activity by similar defendants to name said defendants in one lawsuit." Minute Order, *First Time Videos LLC v. Does 1-500*, No. 1:10-

---

[6] By "joining" all of the Defendants in a single suit, Plaintiff pays a one time filing fee of $350, as opposed to $280,000 if forced to comply with procedure. Several courts that have considered joinder in mass infringement cases have also noted that by filing a single lawsuit, the plaintiffs have avoided paying multiple filing fees. *See, e.g.*, General Order, *UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004, (RJN Exhibit B) (ordering severance of 254 defendants sued in four cases before it, and noting that: "[t]he filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100."). While it may be convenient for Plaintiffs' attorneys (and their business model) to sue in accordance with a single action in the District, Plaintiffs' convenience is not, and should not be *the* basis for joinder.

cv-06254 (N.D. Ill. Oct. 1, 2010), ECF No. 10. See also Minute Order, *CP Productions, Inc. v. Does 1-300*, No. 1:10-cv-06255 (N.D. Ill. Sept. 29, 2010), ECF No. 33. As reported in *Ars Technica*, Judge Milton Shadur in the *CP Productions* matter had the following words for the Plaintiff's attorney:

> "I accepted you at your word," said the judge, pointing to Steele's assertion that the case was connected to Illinois. But, after allowing Steel to take discovery and issue subpoenas to Internet providers, "I start getting motions to quash" from places like Tennessee, Texas, New Jersey, from "people that had nothing at all to do with the state of Illinois." [7]

Fed. R. Civ. P. 21 authorizes the Court to cure the improper joinder of parties by acting "on its own . . . at any time," to "drop a party." Accordingly, the Moving Defendants respectfully request that the Court cure Plaintiff's improper joinder of the hundreds of defendants named in this case by severing and dropping all Does, including the Moving Defendants, from this action.

**D.     Plaintiffs Are Improperly Seeking the Benefits of MDL Litigation Without First Complying With the MDL Requirements**

In pertinent part, 28 U.S.C. §1407(a) provides "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."

If the Plaintiff truly had a good-faith belief that some legitimate reason existed (other than the convenience of Plaintiff's counsel) to consolidate this action in this Court

---

[7] Anderson, Nate, *Ars Technica*, Judge eviscerates P2P lawyer: "I accepted you at your word" (March 11, 2011). (http://arstechnica.com/tech-policy/news/2011/03/judge-eviscerates-p2p-lawyer-i-accepted-you-at-your-word.ars) (Last visited March 25, 2011).

notwithstanding the lack of personal jurisdiction over the Moving Defendants, the MDL statute offers them a clear remedy. What Congress intended for plaintiffs in this type of situation to do was to individually sue Defendants in the Courts that do possess personal jurisdiction over them and then file a motion to consolidate the cases for pretrial purposes as 28 U.S.C. §1407 contemplates.

What Plaintiff manifestly may not do is acquire the benefits of an MDL by arbitrary forum shopping rather than by strict compliance with the Panel's rules. In addition to the burden Plaintiff's disregard of its obligations has placed upon the Court's scarce judicial resources and the disrespect shown to the Panel by Plaintiff's usurpation of its functions, Plaintiff's behavior has forced the Moving Defendants to incur additional legal fees and costs which would ordinarily not have to have been expended. For these reasons, dismissal of the Moving Defendants from this action and an award of attorneys' fees and costs in their favor is appropriate.

**E.     Plaintiff Has Not Made the Requisite Prima Facie Case Regarding Infringement**

Plaintiff has not provided sufficient prima facie evidence that the Moving Defendants infringed Plaintiff's exclusive right to reproduce and distribute its copyrighted work. Plaintiff contends that the Moving Defendants "illegally reproduced and distributed Plaintiff's copyrighted creative works via computer networks." Corrected First Amended Complaint ¶ 1. However, in support of this contention, Plaintiff proffers only that their agents "observed each of the IP addresses listed on Exhibit A [] engaging in infringing activity." Plaintiff does not meet its prima facie burden with this meager showing. Indeed, Plaintiff's agents even fail to draw the connection between the technology and observation methods employed and the IP addresses identified in Exhibit A to the Corrected First Amended Complaint.

At minimum, Plaintiff must present "competent evidence" regarding the investigative process used to obtain Plaintiff's proffered allegations about each of the Moving Defendants that would permit them (and the Court) to evaluate the technology's reliability and completeness. This information should be available to the Plaintiff; providing it as part of its prima facie showing would not be unduly burdensome. *See Dendrite*, 775 A.2d at 772..

Moreover, requiring this showing would be reasonable and consistent with the requirements set forth by other courts in similar file sharing cases. Those courts have found the prima facie burden met with the submission of screen shots showing the IP addresses of each Defendant (so the court can see that the submitted IP addresses match those discovered during the investigation), copies or real-time capture of the "licensed technologies" used, proof that the downloaded movie matched Plaintiff's original film, and shots of the server logs to which the Plaintiff claims to have had access. See, e.g., *Elektra Entm't Group, Inc. v. Does 1-9*, No. 04 Civ. 2289, 2004 WL 2095581, *4 (S.D.N.Y. Sept. 8, 2004).

Without such evidence, the Court must simply accept Plaintiff's word that its technology or methods comport in a way that confirms actual copyright infringement, that it functioned properly in this instance, collected the IP addresses submitted with its complaint and linked them to an actual infringement of the movie. Given the harm that can come from a false accusation, the Court should require more.

## F. Plaintiff Has Yet to Produce the Requisite Copyright Registration or Application for Initiating Suit

There are serious questions as to whether Plaintiff even owns a valid copyright registration. The allegations of the Complaint do not establish that Plaintiff has any right to sue in federal court or for statutory damages or attorney fees. The Complaint alleges that Plaintiff has applied for registration of its copyrights in the works in question, but does not disclose the *date*

on which the applications were filed or the date of first publication for each work. Nor have any copies of the applications been produced.

The fact that Plaintiff alleges application rather than completed registration implies that the application was filed not long before the Complaint was filed. And under 17 U.S.C. § 412, a plaintiff cannot sue for statutory damages or attorney fees unless the infringement "commenced after first publication of the work and before the effective date of its registration, unless the registration is made within three months after the first publication of the work." Additionally, the average processing time for an application is 4.5 months.[8] However it is has now been 7 months since the initial Complaint in this action was filed on September 2, 2010, and there is still no record of any of the named works, or for that matter *anything* registered to Millennium TGA, Inc., appearing in the Copyright Office's catalog.[9]

## IV. CONCLUSION

Plaintiff has the right to seek legal redress for alleged copyright infringement, but it must follow the basic procedures and due process requirements applicable to all civil litigation. Moving Defendants therefore respectfully urge this Court to vacate its ruling on Plaintiff's Motion for Expedited Discovery, quash any outstanding subpoenas already issued by the Plaintiff, and require Plaintiff to immediately notify their recipients that the subpoenas have been quashed. Moving Defendants also suggest that the Court dismiss the action *sua sponte* and require that Plaintiff refile individual cases against individual Defendants in courts that can properly exercise jurisdiction.

---

[8] http://www.copyright.gov/help/faq/faq-what.html#certificate (Last visited March 25, 2011).

[9] http://www.copyright.gov/records/ (Last visited March, 25, 2011).

Dated: March 29, 2011                               Respectfully,

/s/ Jason E. Sweet
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8619
Facsimile: (617) 250-8883
jsweet@boothsweet.com

*Pro Hac Vice Appearance Pending*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2011, I electronically filed the foregoing Motion and Memorandum, plus Exhibits, by using the ECF system, and that a true copy of the aforementioned documents will be served upon counsel of record for Plaintiffs by Notice of Electronic Filing through the ECF system.

/s/ Jason E. Sweet
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8619
Facsimile: (617) 250-8883
jsweet@boothsweet.com