FILED

SEP 1 3 2011
SEP 13 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Millennium TGA, INC. | ) | Case No.: 10-CV-05603 |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | Judge: Blanche M. Manning |
| | ) | |
| DOE | ) | |
|     Defendant. | ) | |
| | ) | |

### DEFENDANT'S REPLY TO RESPONSE BY PLAINTIFF MILLENNIUM TGA, INC. TO ORDER ON MOTION TO QUASH, ORDER ON MOTION TO DISMISS, WRITTEN OPINION

It is telling that John Steele spends the first 90% or so of his response to the Court Order showing how Defendant directed activity and how discovery will aid in that process on continuing to argue whether Defendant has be named. It has been settle by the Court "[I]f it walks like a duck, swims like a duck, and quacks like a duck, it's a duck." It was it not the issue at hand. Nothing in Rule 11 sanctions require party to be named. The fraud is against the Court not the party. Steele essentially argues until the party is served, he can do anything and the Court can't touch him. Furthermore, were the Court to subscribe to Steele's reasoning that the Movant is just some random person spending time and money defending an unrelated person that would most certainly conflict with the Court's explanation that it severed all but 68.239.158.137 based on this Movant's motion. Steele's response even suggests the account holder is not guilty, "he may very well not ultimately be named as a defendant in this case. The popular media is replete with stories of third parties surreptitiously accessing the computer networks of others to commit

1

illegal acts. *See, e.g.*, Order 2, *VPR Internationale v. Does 1–1,017*, No. 11-2068 (C.D. Ill. Apr. 29, 2011)." This statement is the most truthful John Steele has said. To my knowledge Steele has file over 100 complaint in the past year since becoming a copyright lawyer but never named, let alone tried, a single case. Case in point, *Lightspeed Media Corporation v. Does 1-100, 1:10-cv-05604*, which was also assigned to this Court. Although Steele claimed the urgency of discovery and injunctions as he does in all his complaints, he has voluntarily dismissed the case without prejudice. I can only assume the Defendant refused to settle. Even more disturbing is another ongoing case *Millennium TGA v. Does 1-21, 5:11-cv-01739-PSG* (N.D. Cal. 2011) by the same Plaintiff, firm, and investigator, in which Steele's firm explains even after discovery they have no intention of naming a party, "once Movant's Motion to Quash is denied on the merits and his/her identifying information revealed, Plaintiff plans to request a limited inspection of Movant's electronically stored information and tangible things, such as Movant's computer and the computers of those sharing his Internet network, for the purpose of finding the individual that unlawfully violated Plaintiff's copyrighted works by uploading/downloading the file referenced BitTorrent" (Document 26). Steele's firm said it will do the same in *Boy Racer v. Does 1-52*, 5:11-cv-02329-PSG (Document 14).

By any objective measure this complaint will ultimately be dismissed for jurisdiction so the only point in discovery would be to let Steel try to acquire yet another settlement, which is not the purpose of discovery. The risk of disclosing my personal information is not only harassment from Steele but from homophobes and jeopardizes my safety. Transsexuality is even less accepted than homosexuality. A transgender person was

recently murdered in my state. "Investigators believe Chambers shot White after learning she was a transgender female." (http://www.nj.com/news/index.ssf/2011/06/newark_man_indicted_on_murder.html) If the Court should decide to ignore all Steele's bad faith statements and all the facts (or lack of) and allow discovery, at minimum a protective order for identifying information should be enacted. I should not be subjected to even a modicum of harassment let alone violence as result of a complaint in which Steele says "very well not ultimately be named as a defendant."

Without actual upload and download numbers simply being in a swarm conveys, at most, the appearance of attempting to infringe. First of all there are no remedies that I am aware of in copyright law for attempted infringement. More importantly the would be no actual damages, which are at issue. Furthermore, the is no evidence nor allegation this Defendant ever connected to (let alone transferred) **directly** to any computer in Illinois nor has Steele explained the fallacious speculation that this Defendant's contact information will show directed activity as the Court Order commanded. Steele's sole basis for excising jurisdiction is that this Defendant was in a swarm with other computers (including investigators "monitoring computers") in Illinois. First of all, this has already been disproved, which Steele would know if he actually read my motions and he obliviously does not since he never responds to the facts presented. I already geolocated all the IP addresses for "Jizelle" in my first motion and none were in Illinois:

| | | |
|---|---|---|
| 216.102.197.80 | CALIFORNIA | 2010-10-23 12:57:39 AM |
| 75.40.81.66 | OHIO | 2010-11-07 02:36:15 PM |
| 99.38.255.13 | CALIFORNIA | 2010-10-21 03:49:49 AM |
| 72.174.6.75 | MONTANA | 2010-11-07 09:15:54 PM |

| | | |
|---|---|---|
| 72.241.212.60 | OHIO | 2010-11-05 06:53:09 PM |
| 72.49.4.56 | OHIO | 2010-10-20 03:52:14 PM |
| 174.55.2.111 | PENNSYLVANIA | 2010-10-21 03:39:17 PM |
| 24.34.5.131 | MASSACHUSETTS | 2010-11-07 10:54:54 PM |
| 67.165.127.32 | WASHINGTON | 2010-11-05 06:52:29 PM |
| 67.169.14.191 | CALIFORNIA | 2010-10-24 02:26:56 PM |
| 67.181.96.81 | CALIFORNIA | 2010-10-23 02:39:11 PM |
| 69.248.236.18 | NEW JERSEY | 2010-10-23 03:42:23 PM |
| 71.224.158.171 | PENNSYLVANIA | 2010-10-21 12:39:49 AM |
| 76.30.15.228 | TEXAS | 2010-10-22 04:19:39 AM |
| 72.192.254.197 | VIRGINIA | 2010-10-23 02:37:22 PM |
| 98.180.57.18 | FLORIDA | 2010-11-05 06:53:15 PM |
| 69.68.111.142 | MISSOURI | 2010-10-24 02:26:17 PM |
| **68.239.158.137** | **NEW JERSEY** | **2010-10-24 12:36:57 PM** |
| 71.176.37.101 | VIRGINIA | 2010-10-24 05:18:09 AM |
| 65.161.245.186 | TEXAS | 2010-10-25 02:15:02 AM |

Once again I'd like to preemptively dismiss any forthcoming preposterous explanation such as there were other IPs in Illinois, which still remain unnamed, and for some **unbelievable** reason Steele chose not to include these Illinois IPs that would not only be subject to jurisdiction themselves but that might convey jurisdiction to non-Illinois IPs.

As I have already pointed out in my previous motions, using bittorrent does not necessarily result in connecting/transferring to every jurisdiction. Many bittorent programs come with IP filters, this is uncontested by Steele. I realize the Court may not be tech savvy and this can sound overwhelming but it's really not. Here's an easy example: Go to the Plaintiff's website and download all the movies. You can't! Sure you can connect to the website. You could even look up that website's IP address. But you can't download content because you're blocked. This doesn't just hold true for password protected sites. Just look at how China block access to many western websites. Being able to log to go to a website/bittorrent tracker and record an IP does not equal directed activity. I can connect to ilnd.uscourts.gov and look up its IP which is 24.143.206.88

4

(http://who.is/whois/uscourts.gov/). Is the IL Court is availing itself of every jurisdiction?

In *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 916-17 (D. Or. 1999), the court declined to adopt a "broad view of personal jurisdiction" regarding internet sites, and instead recognized that there should be a deliberate action within the forum state "in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at the residents of the forum state." *Id.* at 921 (citing *Calder*, 465 U.S. at 788-90). Because the *Millennium* defendant did not have a substantial connection with Oregon, and did not "purposefully target its activities at Oregon," the court concluded that the exercise of personal jurisdiction was improper. *Id.* at 921-22.

Plaintiff has shown no contact between Illinois and Defendant and rests its complaint on potential infringement from being on the internet. However, courts have long rejected such theories of universal jurisdiction. The Fourth Circuit explained in *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002):

> The argument could . . . be made that the Internet's electronic signals are surrogates for the person and that Internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received. .. But if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would

be eviscerated.

*Id.* at 712-713 (citations omitted). Accordingly, the Fourth Circuit limited the exercise of personal jurisdiction based on Internet usage to situations where the defendant "(1) directs electronic activity into the State, (2) with the manifested **intent of engaging in business or other interactions** within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714. [emphasis added]

This complaint fails all 3 of the requirements. No direct activity (uploading) has even been alleged. No intent has to conduct activity in Illinois has been explain except the fallacious argument that by using bittorrent users intend to infringe in every jurisdiction, and has been disproved via IP filters. It especially fails the final requirement as there in no specific activity alleged other than being in a swarm, which is not a tortious act. Furthermore there is no allegation this for was commercial. By no stretch of the imagination is being in swarm, which merely means connect to a tracker, would a person reasonably believe they are availing themselves of any specific jurisdiction.
While Steele may believe jurisdiction can only be judged after discovery this also false. In *Digiprotect USA Corp. v. John Does 1-266*; 1:10-cv-08759-TPG the Court quashed subpoenas based solely on geolocation and the lack of *prima facie* explaining in its Opinion, "Since Digiprotect can thus make no *prima facie* showing of long-arm jurisdiction over out-of-state defendants, it is left with only those defendants present in the jurisdiction, over whom the court has *in personam* jurisdiction." (S.D.N.Y 2011)

Once Steele argues the fallacy bittorrent equals universal jurisdiction "The manner in which the individual utilized BitTorrent caused him to direct infringing activity into every District in the United States, including this one. *See, e.g., Call of the Wild Movie*, 2011 WL 996786, at *9 (D.D.C. Mar. 22, 2011)."

First, these IPs were clearly not part of the same swarm as there is an 18 day difference between them. I believe what Steele means to say is that his "monitoring computers" were part of a swarm for 18 days during which time it logged IPs that connected to the tracker (not Illinois). By this logic Steele could record IPs for 3 years then say the first person and last person to connect were in the same swarm by relation to him.

Contrary to what one might think, simply connecting to tracker, or swarm, does not necessarily result in transferring of the relevant file. A well-known study from the University of Washington (http://dmca.cs.washington.edu/) showed how it is possible "to remotely generate complaints for nonsense devices including several printers and a (non-NAT) wireless access point." Obviously, a printer cannot download let alone watch a movie. The explanation is rather simple. As the paper explains there are only 2 types of detection possible:
- Indirect detection of infringing users relies on the set of peers returned by the **coordinating tracker only, treating this list as authoritative as to whether or not IPs are actually exchanging data within the swarm**.
- Direct detection involves connecting to a peer reported by the tracker and then exchanging data with that peer. Direct detection has relatively high resource

requirements, a topic we revisit in Section 6.

(http://dmca.cs.washington.edu/dmca_hotsec08.pdf)

Thus the only means to detect **actual activity** is for the investigator to directly connect to AND transfer data and even if did sharing with a representative of the Plaintiff who is authorized to download the work is not copyright infringement.

The issue is simple and still not been answered: "To **who** in **Illinois** did IP address 68.239.158.137 transfer **actual data** of the file. I realize I'm being a little repetitive but it is the crux of the case and yet it never been answered or even acknowledged by Steele. Monitoring software like the investigator uses can collect IPs from a swarm without actually connecting and transferring (i.e.; activity). After the aforemention copyright infringing printer debacle a programmer set about build a more accurate monitoring software, bitAudit, a bittorrent swarm logger, (http://torrentfreak.com/bitaudit-the-tool-you-dont-want-anti-pirates-to-have-100628/) the demo video shows how the program collected nearly 1,000 IPs but only half are even connectable for actual transfer.

**It is vital that the Court understand and distinguish the terms swarm and peers.** A swarm consists of all the IP addresses on the tracker. While Peers are the IP address actually connected to each other. It is exceeding rare that all the people in a swarm will be peers and directly transfer between each other. As I explained in my previous motion each bittorrent client has its on setting on default maximum connection base on users bandwidth and these setting are customizable so that I can set my max connections to 1 and may neither connect to the investigator not anyone the investigator connects to in the

swarm. Steele would like the Court to believe that no matter how far removed in the swarm daisy chain you are, you are directing activity worldwide. There are 3 problems with this besides the obvious indirect nature. First, it's possible for two people to set the max connections to 1 and connect to each other, which would preclude ever transferring to anyone else in the swarm, including the investigator's computer in Illinois. Second, there are programs to preclude upload such as Net Limiter (http://www.netlimiter.com/). Third, sometimes people connect to trackers using ratio cheating programs such as Ratio Master (http://ratiomaster.net/) as John Steele himself explain private trackers require sharing in order to stay a member. These programs trick the tracker into thinking the actual file is being uploaded but the user never actually uploads to anyone. In other words, being in swarm does not automatically mean the will be any actual activity let alone activity between every one in the swarm. And the investigator has never claim to have been a peer nor does Steele's Response. Moreover, according to the investigator's own declaration, "When a verified peer was located who was making Plaintiff's files available for distribution, I downloaded and retained both the torrent files and the actual digital reproductions being offered for distribution to verify that the digital copies being distributed in the swarm were in fact copies of Plaintiff's copyrighted creative works." Not only does it not claim this Defendant was a peer, as I have previously pointed out the first IP to allegedly connect to the tracker for "Jizelle" was 72.49.4.56 on 2010-10-20 03:52:14 PM, 4 days before I was allegedly on tracker. By his own words Hamseier is saying he downloaded the whole movie on October 20th at which time he became a seeder, again according to his own declaration of how bittorrent works, and by the time this Defendant allegedly connected Hansmeier was uploading out of Illinois, not into it.

In fact, as Steele has explained private tracker require sharing in order to be a member, meaning in order to continue to log users he would need continue to upload and why wouldn't he since both Steele and Hansmeier work on a contingency basis (http://mediacopyrightgroup.com/services.htm), which I don't believe he's disclosed and incidentally would negate the Plaintiff's cost as there are none.

The idea of daisy chain responsibility was dismissed in another of Steele and Hansmeier's cases *Hard Drive Productions, Inc. v. Does 1-188*, 3:11-cv-01566-JCS (N.D. Cal., Aug 23, 2011). All but one Doe (who **was** geolocated in the Court's jurisdiction) were severed because as the Court order explained;

"Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm.* **The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.**"

Moreover, the court notes that the declaration submitted in this action, like the declaration in Boy Racer, **appears to contradict the assertion that the Does named in this action are part of a single swarm**. See Hansmeier Decl., ¶ 13 ("[the first step in the infringer-identification process is to locate swarms where peers are distributing the copyrighted creative works.");¶ 14 ("I used all three methods to locate swarms associated with Plaintiff's exclusive license."). Further, although Hansmeier states that he "collected data

10

on the peers in the swarm, including what activities each peer was engaging in and other important such as the date and time that each Defendant was observed by the software as engaging in infringing activity," the exhibit attached to the complaint reflects that the activity of the different IP addresses occurred on different days and times over a two-week period. Id. at ¶ 15. Indeed, Plaintiff concedes that while the Doe Defendants may have participated in the same swarm, "**they may not have been physically present in the swarm on the exact same day and time**." Application at 18; Complaint, Ex. A. As a result, the Court finds unpersuasive the allegation that the Does acted in concert. Therefore, the Court concludes that joinder of the Doe Defendants in this action does not satisfy Rule 20(a)."

While this Court Order was regarding joinder, it is still relevant as it explains you cannot link Defendants via daisy chains. Therefore it is equally dubious to link their activity via daisy chains.

In *On the Cheap, LLC dba Tru Filth, LLC v. Does 1-5011*, 3:10-cv-04472-BZ (N.D. Cal. Sept 6, 2011) the Court sever all but Doe 17 (who again resided in the jurisdiction) because it was unreasonable to expect defendants who lived in California (same state) but different District. The Court found Plaintif's approach to personal jurisdiction was not tenable. First, it dismissed that a prima facie of jurisdiction had been made because there were no jurisdictional allegation in the complaint. Second, the Court dismissed the idea to Bittorrent conveys universal jurisdiction:

> Plaintiff also assert that by virtue of their "swarming" activity, the out-of-state-

defendants have engaged in concerted activity with California defendant. The problem with this theory is that since the plaintiff could have filed this lawsuit in any state, **the logical extension would be that everybody who used P2P software such as BitTorrent would subject themselves to jurisdiction in every state. This is a far cry from the requirement that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state," which is the hallmark of specific jurisdiction.** See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quotations and citations omitted); Schwarznegger v. Ford Martin Motor Co., 374 F.3d 797, 801-802 (9th Cir. 2004). [emphasis added]

The Court also pointed out "it appears that the copyright laws are being used as part of a massive collection scheme and not to promote useful arts."

John Steele's conclusion once again goes back to trying to get this Defendant's motions stricken on the belief the court should follow Rule 11 signature requirements. However this would mean investigator Hansmeier's entire declaration should be stricken as well. Not only does Hansmeier provide no contact information (signer's address, e-mail address, and telephone number), the signature is initialed Paul H. He might as well signed it 'tech guy' after all it would be as detailed as his declaration, which again alleged no specific activity. Since he is the impetus and an interested party working on a contingency basis for this complaint I see no reason he should remain anonymous.

### Conclusion

12

To summarize the actual facts of the complaint: not a single party resides in Illinois (the Defendant is in New Jersey, the Plaintiff is in California, the investigator is in Minnesota, and John Steele has moved to Florida). Steele wants the Court to believe not only that connecting to a torrent tracker is infringement without any evidence of actual uploading or downloading but that a daisy chain 18 days long amounts to directed activity. Apparently Steele doesn't know the difference between direct and indirect. The notion that speculation of an unknown amount uploading/downloading might have indirectly meandered its way from IP to IP and eventually into Illinois creates the expectation to be haled into Illinois is absurd. Regardless, as I have pointed out the investigator swore that once he had a verified peer, which was presumably Oct 20th 2010 as that was the first IP accused of connecting to tracker/swarm, he downloaded a complete copy to verify it. This means when this Defendant allegedly connected to the tracker on Oct 24th 2010, the Investigator was a seeder, which he also swore to in his declaration, explaining that once a download is complete you become a seeder. Therefore he willfully transferred his employer's work out of (not into) Illinois and he had every incentive to share as he works on a contingency basis (again this was undisclosed). Even if the investigator had not completed his download before this Defendant allegedly connected to the tracker (according to his own declaration), I would argue a defendant who uploads directly to the investigator who has been authorized by the Plaintiff to download isn't copyright infringement. Moreover, it certainly creates no actual damages, which is what the Plaintiff is asking for. Showing directed activity should be simple. All Steele would need to do is give simple factual details such as Defendant uploaded 100 MB of data to IP 123.45.67.89, which is located in Illinois. The fact that he hasn't done so speaks volumes

as does his response, which essentially ends by saying anyone using bittorrent is implicitly submitting to universal jurisdiction, which has been his argument all along. However, Steele once again contradicted himself because in the Second Amended Complaint he argued against activity occurring in every jurisdiction, "Plaintiff's state of incorporation, California, is a less desirable venue for this action because the investigation, potential witnesses, harm and activity occurred in this District and **not in California**." [emphasis added]. They say when you tell the truth you don't have to worry about keep your stories straight. Not only has Steele not shown any actual direct activity with Illinois he has not explained how "the information it has sought from the ISP will allow it to show that Doe IP Address 68.239.158.137's allegedly infringing activities were directed towards Illinois such that this court would have personal jurisdiction over Doe IP Address 68.239.158.137" as the Court ordered. Steele appears to assume data was distributed as no specifics are given, then assumes bittorrent's daisy chain nature results in data getting distributed universally thus universal jurisdiction. If this were true so would linking all those in the chain theoretically for 3 years (the statute of limitations), which is not only absurd it has been disproved in the aforementioned *Hard Drive Productions, Inc. v. Does 1-188,* 3:11-cv-01566-JCS (N.D. Cal., Aug 23, 2011). Even if all of Steele's ambiguous speculation that this Defendant transferred content for free personal use and it eventually traveled through a daisy chaining to Illinois it does show not directed activity and it most certainly does not demonstrate the "manifested **intent** of engaging in business or other interactions within the State" required by the 4th Circuit or the reasonableness require in all Circuits.

In *Asahi Metal Indus. Co. v. Superior Court,* Justice O'Connor concluded that "something more" was required.34 The defendant must have engaged in some act **"purposefully directed toward the forum state."**35 Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. **But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.**36

Two plurality opinions issued almost 25 years ago in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987), injected the "stream of commerce" metaphor into the vernacular of the personal jurisdiction inquiry. In dicta, Justice O'Connor (joined by three other Justices) wrote that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant...indicat[ing] an intent or purpose to serve the market in the forum State, [is required]...[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Id. at 112 The U.S. Supreme Court held that the New Jersey court lacked jurisdiction because the plaintiff did not establish that the defendant

"engaged in conduct purposefully directed at New Jersey." Id. at 11.

Steele's idea of directed activity and whole basis for exercising jurisdiction is that this Defendant used bittorent and "participated in the swarm of computers that was formed to distribute Plaintiff's work." As I have explained in previous motions and this reply it is possible to preclude distribution through IP filters, upload blocker, and limiting connections. It is even possible for printers to join swarms. Steele does say "In addition, the individual was using the BitTorrent protocol to distribute data." However, absent any specifics this sounds like a purely speculative assumption that anyone who connects to Bittorent automatically distributes. Furthermore, it if the Court accepts such an ambiguous allegation amounting a police officer asking for a search warrant because 'someone was seen standing on the street corner know for drug dealers' therefore they must have dealt drugs regardless of any specifics (i.e., idea how much or to who), it **still does not demonstrate directed activity at Illinois**, which is why Steele rests on the idea of bittorrent creating a daisy chain which gives universal jurisdiction. Showing directed activity is as simple as saying the Defendant uploaded this **specific amount** to this **specific computer** in **Illinois**, which Plaintiff has not done nor has it explained how discovery would aid in such specifics, because it clearly would not.

Respectfully submitted,
John Doe 68.239.158.137

By: /s/ John Doe 68.239.158.137
Pro Se
John Doe
JohnDoe68.239.158.137@mail.com

## Certificate of Service

I hereby certify that the foregoing DEFENDANT'S REPLY TO RESPONSE was sent to the plaintiff's attorney John Steele at Steele Hansmeier PLLC, 1111 Lincoln Rd, Suite 400 Miami Beach, FL 33139, via USPS Priority Mail on Sept 8, 2011.

By: /s/ John Doe 68.239.158.137
Pro Se
John Doe
JohnDoe68.239.158.137@mail.com
